Gerald W. MOODY, Jermoo's, Inc., Freeway City Investments, Ltd., and Freeway City Leasing Corp., Debtors proceeding under Chapter 11 of Title 11, United States Code, in the Bankruptcy Court for the Western District of Wisconsin, Plaintiffs,

v.

Honorable Robert D. MARTIN, Bankruptcy Judge for the Western District of Wisconsin, Defendant, and

Kayser Leasing Corporation, a Wisconsin corporation, Party-in-Interest.

No. 83–C–174–C.

United States District Court, W.D. Wisconsin.

March 7, 1983.

Michael B. Van Sicklen, Foley & Lardner, Madison, Wis., for plaintiffs.

Honorable Robert D. Martin, Bankruptcy Judge, pro se.

Michael Lawton, Madison, Wis., for party-in-interest.

## OPINION AND ORDER

BARBARA B. CRABB, Chief Judge.

This is a civil action for declaratory and injunctive relief in the nature of manda-

mus. Plaintiffs seek an order of this court directing the bankruptcy judges of the United States Bankruptcy Court for the Western District of Wisconsin to exercise jurisdiction over bankruptcy cases filed after December 24, 1982. The action arises because the defendant has declined to act in any bankruptcy cases filed after that date, concluding that, in light of the decision of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), he is without jurisdiction to take any action in such cases.

Jurisdiction is present. 28 U.S.C. § 1361.[1]

■ This dispute arises out of the efforts of Congress to restructure the federal bankruptcy system. These efforts reached fruition in 1978, when Congress enacted a wholly new bankruptcy law which eliminated the referee system and established bankruptcy courts in each judicial district. The new bankruptcy courts were to have broader jurisdiction than that exercised by the referees under the old system, including jurisdiction to hear claims based on state law as well as those based on federal law. Where the old bankruptcy act had distinguished between "summary" and "plenary" jurisdiction, the new act gave the new bankruptcy courts jurisdiction over all "civil

proceedings arising under Title 11 [Bankruptcy] or arising in or related to cases under Title 11." § 241 Bankruptcy Act of 1978, 28 U.S.C. §§ 1471(b) and (c).

The Bankruptcy Act of 1978 consists of four titles. Title I is devoted to substantive bankruptcy law. Title II deals with the structure of the new courts, the appointment of judges and other personnel, jurisdiction and venue, appeals from the new courts and other amendments to Title 28 of the United States Code. Title III amends statutes affecting the administration of bankruptcy. Title IV is the transition section.

Section 241(a) is located in Title II of the Act. It purports to amend Title 28 of the United States Code to add a new chapter entitled, "Chapter 90-District Courts and Bankruptcy Courts." Within the new Chapter 90 are sections dealing with such matters as venue, appeals, etc. The critical section for purposes of this opinion is the section on jurisdiction, which is § 1471 of Chapter 90. The section reads as follows:

§ 1471. Jurisdiction

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases until title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a

---

1. Mandamus jurisdiction under 28 U.S.C. § 1361 is said to depend upon a plaintiff's right to demand that a defendant perform a ministerial duty, *see, e.g., Vishnevsky v. United States,* 581 F.2d 1249, 1253 (7th Cir.1978), because if the alleged duty is discretionary, there is no real duty owed. *Short v. Murphy,* 512 F.2d 374 (6th Cir.1975). However, the ministerial-discretionary distinction is misleading, because it suggests that it is the nature of the act that is important instead of the plaintiff's entitlement to it. A more accurate description of the prerequisite to mandamus jurisdiction was set forth in *Holmes v. United States Board of Parole,* 541 F.2d 1243, 1247 n. 5 (7th Cir.1976): Plaintiff must show "a plainly defined and peremptory duty on the part of the defendant to do the act in question." *Quoted in City of Milwaukee v. Saxbe,* 546 F.2d 693, 700 (7th Cir.1976). Thus, although plaintiffs are seeking to require defendant to exercise his discretion, mandamus is appropriate if defendant has

a clear duty to do so. *See also Abbruzzese v. Berzak,* 412 F.Supp. 201, 203 (D.N.J.1976), *aff'd,* 601 F.2d 107 (3d Cir.1979) ("Mandamus (or procedendo) is a proper remedy to compel an official to act, even where the performance of the act involves discretion, so long as it does not direct him *how* to exercise it.") *See also La Buy v. Howes Leather Co., Inc.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (writ of mandamus properly issued by court of appeals to compel U.S. District Judge La Buy to vacate references of trials of two antitrust cases to special masters).

Moreover, "mandamus has long been recognized to be available to compel a judge or officer to exercise discretion which he erroneously considered himself to lack." *United States v. Nebbia,* 357 F.2d 303, 305 (2d Cir. 1966), *quoted in United States v. Gonzalez,* 582 F.2d 1162, 1165 (7th Cir.1978).

court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) and (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

28 U.S.C. § 1471.

Under the new Bankruptcy Act, there was to be a transition period from the date of enactment until April, 1984, when the new provisions would take full effect. During this transition period, the incumbent referees were to serve as bankruptcy judges, empowered to exercise all of the jurisdiction and powers provided to the bankruptcy courts under the new act. § 405 Bankruptcy Act of 1978.

On June 28, 1982, the United States Supreme Court decided *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a case arising out of proceedings initiated in the United States Bankruptcy Court for the District of Minnesota after Northern Pipeline had filed a petition for reorganization. Northern had begun suit against Marathon in the bankruptcy court, seeking damages for alleged breach of contract and warranty, alleged misrepresentation, coercion, and duress. Marathon

sought dismissal of the suit. The bankruptcy court denied the motion; the district court granted the motion on appeal, holding unconstitutional the delegation of authority in § 241(a) of the Bankruptcy Act of 1978 to the bankruptcy judges to try cases otherwise relegated under the Constitution to Article III judges. The United States Supreme Court granted certiorari, and a four-justice plurality of the court reached the same conclusion as the district court: that "the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional." *Id.* at ——, 102 S.Ct. at 2880. Two concurring justices agreed on the unconstitutionality of at least that part of § 241(a) that permits bankruptcy courts to entertain a lawsuit in which the claims arise entirely under state law. They concurred with the judgment of the plurality that because there was no clear way to separate the unconstitutional aspects of the general grant of authority contained in § 241 from those aspects that would be constitutional, the entire grant must be held unconstitutional. *Id.* at ——, 102 S.Ct. at 2883.

The Court specified that its holding would apply prospectively only and that it would be stayed until October 4, 1982, "to afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Id.* at ——, 102 S.Ct. at 2880. When Congress failed to act by October 4, the Court extended its stay until December 24, 1982, but refused to extend the stay a second time when Congress failed again to act.

Pursuant to the direction of the Seventh Circuit Judicial Council, this court adopted an Emergency Rule Regarding Bankruptcy Cases and Proceedings in an order dated December 24, 1982. The stated purpose of the emergency rule was to

[S]upplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bank-

ruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* ── U.S. ──, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever occurs first.

The order recited that the judges of this court found the existence of exceptional circumstances that mandated adoption of the emergency rule, concluding that "the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges." *Id.*

Similar versions of this same rule were enacted by federal district courts throughout the United States.

On February 9, 1983, in a matter entitled *Janesville Lodging Ltd.,* Adversary Proceeding No. 830027, the defendant held that he was without jurisdiction to decide or otherwise handle issues arising in bankruptcy proceedings and cases filed after December 24, 1982.

The facts relevant to this case have been stipulated to by the parties.

## FACTS

On February 4, 1983, the above-captioned plaintiffs filed voluntary petitions for relief in the Bankruptcy Court for the Western District of Wisconsin under Chapter 11, Title 11, United States Code. At the time of filing the petitions, plaintiffs deferred filing the requisite Statements of Affairs and Schedules for each petition for up to ten days or until February 14, 1983, an election they were permitted to make under the Local Rules of the Bankruptcy Court for the Western District of Wisconsin. Also at the time of filing their petitions, plaintiff applied for an Order for Joint Administration of estates of related debtors and for designation of Madison, Wisconsin as the situs of all further proceedings. On February 14, 1983, plaintiffs filed an application for an order extending the time in which to file the requisite Statements of Affairs and Schedules. This application was docketed in the bankruptcy court, but no other action has been taken.

On February 16, 1983, the Bankruptcy Court for the Western District of Wisconsin, by its clerk, notified counsel for plaintiffs that pursuant to the ruling in *Janesville Lodging Ltd.,* defendant would decline to exercise jurisdiction to oversee or otherwise decide the application for joint administration and change of venue filed in this case. Also, the clerk informed counsel that by automatic operation of the bankruptcy laws, February 25, 1983 was the deadline by which the bankruptcy court must mail notice to all interested parties of the first meeting of creditors, and that the bankruptcy court considered itself to be without jurisdiction to rule on the application for joint administration and change of situs.

Unless plaintiffs are granted relief, the four bankruptcy proceedings will automatically proceed without benefit of joint administration, and at an inconvenient situs. Also, plaintiffs will be in technical default for having failed to secure an order granting their unopposed application for additional time to file their Statements of Affairs and Schedules.

On February 16, 1983, Michael L. Lawton, attorney for Kayser Leasing Corporation, attempted to file with this court, and did in fact file with the bankruptcy court, a "Motion to Withdraw Reference with Respect to Application to Terminate Stay or, in the alternative, to Condition Stay." Plaintiffs' attorneys were informed by the district court clerk that he had declined to docket the motion and had directed Kayser's attorney to proceed initially in bankruptcy court.

Kayser has moved the bankruptcy court to: (1) lift the automatic stay of 11 U.S.C. § 362(a), under § 362(d) or, in the alternative, condition the stay on the furnishing of adequate protection under § 361; and (2) return the matter to this court, that is, to withdraw the reference, so this court can address the bankruptcy issues involved in

the motion if the bankruptcy court declines to exercise jurisdiction.

Plaintiffs oppose Kayser's motion to lift or condition the stay, on the ground that the leases are only disguised security agreements. Further, plaintiffs represent that they plan to exercise their right to request a bankruptcy court hearing within thirty days in regard to Kayser's motion. However, counsel for plaintiffs have been informed by the clerk of the bankruptcy court that the defendant believes himself to be without jurisdiction to decide Kayser's motion.

As of March 4, 1983, the date of the hearing in this case, Congress had enacted no remedial legislation addressing the constitutionally defective provisions of the Bankruptcy Act of 1978.

## OPINION

In ruling that he was without jurisdiction over any bankruptcy cases filed after December 24, 1982, defendant Martin stated that he was adopting the reasoning of the United States Bankruptcy Court for the Middle District of Tennessee in a memorandum decision entered January 26, 1983, in a bankruptcy case entitled *In re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983). In *Conley,* the bankruptcy court concluded that the import of the *Marathon* ruling was that the district courts as well as the bankruptcy courts lacked jurisdiction to hear bankruptcy cases; that the district courts could not delegate to the bankruptcy courts a jurisdiction they did not have themselves; and that even if the district courts did have jurisdiction they could not delegate to the bankruptcy judges the same grant of jurisdiction held unconstitutional in *Marathon.*

As I understand defendant's position as expressed at the hearing, it differs from the *Conley* opinion in that defendant does not maintain that the district courts lack jurisdiction to hear bankruptcy cases. However, defendant makes the point that even if the district courts have jurisdiction themselves to hear cases in bankruptcy, only Congress can create jurisdiction in a court or in a special judicial officer, such as a master or even a United States Magistrate; that district courts have no authority to make references of jurisdiction except as permitted by Congress; and that the attempt to delegate jurisdiction to the bankruptcy courts through the adoption of the Emergency Rule is invalid and without effect.

Although the arguments raised by defendant are substantial, I find that I am unable to agree with his conclusion that he cannot exercise any jurisdiction over bankruptcy cases filed after December 24, 1982. For the reasons that follow, I find and conclude that the district courts do retain jurisdiction over bankruptcy and that they may delegate aspects of this jurisdiction to the bankruptcy courts under carefully circumscribed conditions, and that the Emergency Rule promulgated by this court pursuant to the directive of the Seventh Circuit Judicial Council is a valid delegation of jurisdiction to the bankruptcy courts.

### 1. District Court Jurisdiction

Much of the confusion about the operation and effect of the Bankruptcy Act of 1978 is caused by the manner in which the act's provisions are to be phased into effect. Certain provisions went into effect immediately upon enactment, others as of October 1, 1979, and still others do not go into effect until April 1, 1984. Interestingly, § 241, the section addressed in *Marathon,* is one of those that does not take effect until April 1, 1984.

During the transition period, the amendments made by § 241 of the act are to apply to the courts of bankruptcy existing on September 1, 1979 and continued through March 31, 1984. § 405(b) Bankruptcy Act of 1978. In other words, the former bankruptcy referees and other bankruptcy judges appointed during the transition are empowered to exercise § 241 jurisdiction which is conferred upon the continued courts of bankruptcy until April

1, 1984. The phrase "courts of bankruptcy" refers to both the old 1898 courts of bankruptcy and the district courts. § 404(a) Bankruptcy Act of 1978; 11 U.S.C. § 1(10) (repealed). The new act establishes bankruptcy courts to be known as the United States Bankruptcy Court for each judicial district. § 201(a) Bankruptcy Act of 1978, 28 U.S.C. § 151.

Although I understand defendant does not assert that the district courts have no jurisdiction to hear bankruptcy cases, I will discuss the point briefly.

In *In re Conley,* 26 B.R. 885 (Bkrtcy.M.D. Tenn.1983), the bankruptcy court concluded that the district courts had no continuing bankruptcy jurisdiction. The bankruptcy court found that any attempted grant of bankruptcy jurisdiction to the district courts that was contained in § 241(a) of the new bankruptcy act was invalidated by the Supreme Court's decision in *Marathon,* where both the plurality and the concurring justices "refused to sever the jurisdictional grant in § 1471 between the bankruptcy courts, which the Court found unconstitutional as presently constructed, and the district courts." *In re Conley,* at 893.

Additionally, in *Conley,* the bankruptcy court found that no jurisdiction was continued in the district courts by 28 U.S.C. § 1334 for three reasons: because such an interpretation would be contrary to the Congressional intention expressed in 28 U.S.C. § 1471(c) (§ 241(a) of the Bankruptcy Act of 1978) to place all subject matter jurisdiction over bankruptcy cases in the bankruptcy courts; because §· 1334 does not vest in the district courts original and exclusive jurisdiction of all *cases* under Title 11, but only jurisdiction of all matters and proceedings; and because the grant of jurisdiction in § 1334 was predicated upon the district court's power under the old bankruptcy act to exercise jurisdiction over persons or property within the territorial limits of the court.

None of these conclusions survives close analysis.

 As I understand the bankruptcy court's conclusion that the Supreme Court had invalidated the *entire* grant of jurisdiction contained in § 241, it derives from the plurality's refusal to attempt its *own* restructuring of the act. In a footnote, the plurality stated that it declined to accept the view that had Congress anticipated the Court's holding it would have resolved the ensuing problems by routing the particular controversy in *Marathon* to the district court.[2] In *Conley* the bankruptcy court appears to read this comment as holding that the § 241(a) grant of jurisdiction is unconstitutional in its entirety, because it cannot be separated clearly into what the bankruptcy courts may hear and what only the district courts may hear.

In fact, the holding of the Court is that it is the "broad grant of jurisdiction *to the*

2. The full footnote reads as follows:

It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that *one of the express purposes of the Act was to* ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. *See* H.R.Rep. No. 95–595, *supra,* p. 43–48; S.Rep. No. 95–989, p. 17 (1978). Nor can we assume, as THE CHIEF JUSTICE suggests, *post,* at 2, that Congress' choice would be to have this case "routed to the United States district court of which the bankruptcy court is an adjunct." We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

*bankruptcy courts* contained in § 241(a)" that is unconstitutional. (Emphasis added.) The plurality's conclusion is that

> § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Marathon,* —— U.S. at ——, 102 S.Ct. at 2879–2880. Clearly, the Court is holding unconstitutional only that portion of § 241(a) that purports to grant to the bankruptcy courts broad jurisdiction over all civil proceedings arising under title 11 or arising in or related to bankruptcy cases. Nothing in the footnote compels a different result; it only underscores the Court's conclusion that the structure of the challenged statute precluded the Court's separating the constitutional from the unconstitutional powers granted to the bankruptcy court and invalidating only the latter. Such a separation was not possible because the statute did not enumerate the bankruptcy court's powers with sufficient specificity to make the constitutionally infirm sections readily severable, and also because Congress' grant of *all* bankruptcy jurisdiction to the bankruptcy courts in § 1471(c) indicated a legislative intent to route all bankruptcy matters to a single forum. Accordingly, the Court was forced to hold the entire grant *to the bankruptcy courts* unconstitutional and to hold as well that the bankruptcy courts cannot avoid the force of the holding by referring back to the district courts on a piecemeal basis any contested matters that raise issues of state law or are otherwise beyond the bankruptcy court's jurisdiction. It does not mean that the district courts cannot hear those cases in the exercise of the bankruptcy jurisdiction conveyed to them by the portion of § 241(a) not held to be unconstitutional.

█ Moreover, I conclude that 28 U.S.C. § 1334 continues bankruptcy jurisdiction in the district courts until at least April 1, 1984. At present, that section provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the states, of all matters and proceedings in bankruptcy." Under the new bankruptcy act, § 1334 is amended to read as follows, effective April 1, 1984:

§ 1334. Bankruptcy appeals

(a) The district courts for districts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.

(b) The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.

(c) A district court may not refer an appeal under that section to a magistrate or to a special master.

The fact that the old § 1334 remains in force through the transition period is evidence of a Congressional intention to maintain district court jurisdiction over bankruptcy. This intention is further substantiated by §§ 404 and 405(b) of the Bankruptcy Act of 1978, which provide for the continuation of the 1898 "courts of bankruptcy" and make applicable to these courts the amendments made in § 241 and other sections of Title II of the act. *In re Matlock Trailer Corp.,* 27 B.R. 318 at 324, Gen. Docket No. 3:83–X–5, slip op. at 11 (D.C.M.D.Tenn. Feb. 23, 1983); *In the matter of Northland Point Partners,* 26 B.R. 860 (D.C. E.D.Mich.1983).

Of course, Congress also clearly intended that the bankruptcy courts exercise the district court's bankruptcy jurisdiction. §§ 241 and 405 Bankruptcy Act of 1978. Yet the *Marathon* decision held unconstitutional the Congressional attempt, set forth in 28 U.S.C. § 1471(c), to place all subject matter jurisdiction over bankruptcy cases in non-Article III bankruptcy judges. To the

extent that exercise of such jurisdiction by the district courts conflicts with the Congressional intention that such jurisdiction be exercised exclusively by bankruptcy judges, the conflict is of no legal significance in light of the intervening Supreme Court holding.

■ In *Conley,* the bankruptcy court takes the position that under § 1334, the district courts do not have full jurisdiction over everything in bankruptcy because § 1334 refers only to "matters and proceedings." If that is a distinction of any moment, it is no barrier to district court exercise of jurisdiction. As a "court of bankruptcy," the district court is empowered to exercise during the transition period all of the jurisdiction conferred upon such courts by § 241 of the act. Since § 241 is unconstitutional only to the extent that it permits non-Article III judges to exercise any of the authority granted to the 1898 courts of bankruptcy continued by the new act, § 241 remains a valid source of jurisdiction for Article III courts.

By the same reasoning, Article III district courts can exercise jurisdiction over all the debtor's property, wherever it is located, pursuant to 28 U.S.C. § 1471(e) and § 405 of the Bankruptcy Act of 1978.

I conclude that at least during the transition period for the new act, the district courts retain jurisdiction over bankruptcy cases. The question to which I turn next is whether any of that jurisdiction can be delegated to the bankruptcy court adjunct to this court.

### 2. Delegation of Duties to the Bankruptcy Court

Defendant makes a strong argument for the proposition that the Emergency Rule is invalid because it attempts to do something that is outside the scope of any court's authority, that is, to create or to delegate jurisdiction in another court. Defendant suggests that if any judicial activity is to be delegated, it may be done only through a mechanism that is statutorily authorized, such as through the use of special masters pursuant to Rule 53, Federal Rules of Civil Procedure. He argues that it would be inconceivable for a court to decide on its own that another court should exercise some part of its jurisdiction. For example, a district court would have no authority to decide to give bankruptcy courts (or any other courts) authority to hear and determine and enter final judgments in Title VII cases. Nor would a constitutionally valid bankruptcy court have authority to create a subsidiary court to handle all motions for relief from stay.

■ In the wake of *Marathon,* it is clear that bankruptcy judges have no authority under the Bankruptcy Act of 1978 to exercise *any* jurisdiction in bankruptcy cases. It could be argued that, because there was no majority opinion finding unconstitutional any aspect of the 1978 jurisdictional grant except that permitting bankruptcy judges to decide state law claims in cases "related to" bankruptcy proceedings, they remain free to exercise all other forms of jurisdiction. However, that argument would be disingenuous in light of the statements in both the plurality and concurring opinions that the statutory grant of jurisdiction was not readily severed.

Thus, the issue comes down to the legitimacy of the district court's delegation of its bankruptcy jurisdiction under the Emergency Rule or under any other mechanism apart from the Bankruptcy Act of 1978. Defendant's argument that any delegation is not legitimate has considerable force. In the past, attempts by courts to carve out and delegate jurisdiction have been roundly criticized. *See, e.g., La Buy v. Howes Leather Co., Inc.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (court of appeals properly issued writ of mandamus requiring United States District Judge La Buy to vacate orders referring the trials of two civil antitrust cases to special masters under Rule 53, Federal Rules of Civil Procedure). *See also Wingo v. Wedding,* 418 U.S. 461, 94

S.Ct. 2842, 41 L.Ed.2d 879 (1974) (error for district court to assign to United States Magistrates the conduct of evidentiary hearings for writs of habeas corpus when the Federal Magistrates Act, 28 U.S.C. § 636(b) did not provide for such an assignment).

Certainly, if the district courts were to refer out all Title VII cases or if the bankruptcy courts were to create a new judicial officer or court to hear motions for relief from stay, there would be no question of the unconstitutionality of such actions. But it does not follow from these examples of clearly unconstitutional delegation of jurisdiction that the delegation at issue here is unconstitutional. While there is certain logic in a view of the Emergency Rule as wholly outside the authority of the district courts as an attempt to create or delegate jurisdiction to another court, that view collides with reality and common sense.

■ The reality is that there is in place an entire system of bankruptcy courts, staffed with judges and supporting personnel who have specialized knowledge and experience in the handling of bankruptcy cases. That system was created by Congress, not by the courts, and for the purpose of performing the same functions the district courts have delegated to the bankruptcy courts under local Emergency or Interim Rules.[3] So long as the district courts assign to the bankruptcy courts no functions beyond what Congress was willing to assign to them, there is no ground for the argument that the courts have usurped an authority that belongs exclusively to Congress.

The justification for some kind of reference of bankruptcy matters is clear.[4] District courts cannot provide the immediate judicial response crucial to the creation and operation of ongoing financial reorganizations. Without immediate judicial action, opportunities for loans, for refinancing arrangements, for sales of real estate or personal property, and for renegotiation of leases or service contracts can be lost forever. What is less clear is the constitutionally permissible scope of that reference. Though the boundary is difficult to discern, I conclude on the basis of existing law that it is not exceeded by the Emergency Rule enacted in this district.

■ To determine the constitutional limits of the proper delegation of bankruptcy matters, it is necessary to look to the *Marathon* case. The only clear majority holding in that case is that the bankruptcy courts, lacking the attributes of Article III courts, could not constitutionally be granted jurisdiction over a state common-law action in contract and tort which was related only peripherally to an adjudication of bankruptcy. By no means do the underlying issues in the instant case resemble the third-party action giving rise to the *Marathon* decision. Furthermore, by its terms the Emergency Rule (attached hereto as Appendix I) deprives the bankruptcy court of jurisdiction over proceedings merely "related to" (rather than arising in or under) Title 11; in such cases, the bankruptcy judge is relegated to the role of a referee who may not enter any judgment or dispositive order without the consent of the parties, but rather must submit findings, conclusions, and a

3. Nothing in *Marathon* attacks the manner in which the bankruptcy courts are established or in which they operate; it is directed only to the scope of jurisdiction they are to exercise.

4. The power of the judicial council to make such recommendations is well established by statute. 28 U.S.C. § 332(d)(1) provides that "[e]ach judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. § 332(d)(2) provides

further, "all judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council." Additionally, the federal courts enjoy the general power to establish rules for the conduct of their business, both on the basis of statute, *see* 28 U.S.C. § 2071, and on the basis of their inherent power "to provide themselves with appropriate instruments required for the performance of their duties." *Ex Parte Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920).

proposed judgment or order to the district court. Emergency Rule (d)(3). Thus, the Emergency Rule does not contravene the *Marathon* holding.

However, the plurality opinion by Justice Brennan indicates a possibly broader range of powers not properly delegable to the bankruptcy courts. The courts created by the new Bankruptcy Act differ from permissible "adjuncts" to Article III courts, according to the plurality, not only because the act grants jurisdiction over matters merely "related to" Title 11, but also because: the act grants to the bankruptcy courts *all* of the jurisdiction conferred by the act on the district courts; it grants the bankruptcy courts a full range of the ordinary powers of the district court, including the powers to conduct jury trials, issue declaratory judgments, issue writs of habeas corpus, and enter other orders and judgments; it creates bodies whose judgments are subject to review only under the deferential "clearly erroneous" standard; and it accords the bankruptcy courts the power to issue final judgments which are binding and enforceable upon entry. *Marathon,* —— U.S. at ——, 102 S.Ct. at 2878–2879.

Most of these characteristics of the Bankruptcy Act are eliminated in the Emergency Rule. As noted earlier, the Rule sharply circumscribes the range of the subject matter over which the bankruptcy court enjoys the power to enter orders and judgment. The district court's power to withdraw a reference at any time, Emergency Rule (c)(2), eliminates the total grant of bankruptcy jurisdiction to the bankruptcy courts. Under the Rule, the bankruptcy court no longer may conduct jury trials, Emergency Rule (d)(1)(D), and the court's orders and judgments are subject to *de novo* review, Emergency Rule (e)(2)(B), rather than to review under a clearly erroneous standard. Although the bankruptcy court may enter final judgments and dispositive orders in matters arising in or under Title 11, the right to *de novo* review by the district court at the instance of any

affected party essentially renders the enforceability of judgments by the bankruptcy judge dependent upon the district court. Under these circumstances, the Rule can hardly be said to retain the bankruptcy courts as separate courts "independent of the United States district courts." *Marathon,* —— U.S. at ——, 102 S.Ct. at 2876, fn. 31.

In setting forth the characteristics differentiating the bankruptcy courts from properly structured adjuncts to Article III courts, the plurality opinion suggests strongly that, with the exceptions of jurisdiction over "related" matters and the total grant of bankruptcy jurisdiction to the bankruptcy courts, no one of these differentiating characteristics taken alone would suffice to render a delegation scheme unconstitutional. The plurality held that the Bankruptcy Act "has impermissibly removed *most, if not all,* of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct." *Marathon,* —— U.S. at ——, 102 S.Ct. at 2879–2880 (emphasis added). Therefore, the fact that the Rule permits the bankruptcy judges to enter final judgments and dispositive orders in proceedings arising in or under Title 11 does not in itself constitute an impermissible delegation of powers, when the Rule has removed from the bankruptcy court a host of other powers which it enjoyed under that portion of the act invalidated in *Marathon,* including the two powers which the Court found most untenable.

I note further that nowhere in *Marathon* does the Court indicate that the act's constitutional and unconstitutional grants of power to the bankruptcy courts are *conceptually* inseparable. As discussed earlier, footnote 40 expresses the plurality's unwillingness to engage in such a "carving-up" process in the face of a statute which is not readily severable. Similarly, Justice Rehnquist states in concurrence, ". . . I agree with the plurality that this grant of authority is not readily severable from the remain-

ing grant of authority to Bankruptcy Courts...." *Id.* at ——, 102 S.Ct. at 2882. I conclude that the Rule delegates powers and duties to the bankruptcy courts which they may legitimately exercise and perform, while retaining jurisdiction over bankruptcy matters in the district court and reserving to the district court "most, if not all, of 'the essential attributes of the judicial power.'" *Id.,* at ——, 102 S.Ct. at 2880.

Accordingly, I conclude that plaintiffs are entitled to the relief which they seek.

## ORDER

IT IS ORDERED that the Emergency Rule Regarding Bankruptcy Cases and Proceedings entered by this court in an order dated December 24, 1982, is declared valid and enforceable. Further, IT IS ORDERED that defendant, the Honorable Robert D. Martin, is to exercise jurisdiction and perform his official duties in conformance with the provisions of the Emergency Rule, in regard to the matters and proceedings before him in this case as well as in all matters as shall properly come before him under the Emergency Rule.

## Appendix I

### United States District Court

### Western District of Wisconsin

### Filed Dec. 27, 1982

ORDER ADOPTING EMERGENCY RULE REGARDING BANKRUPTCY CASES AND PROCEEDINGS

IT IS ORDERED that the following rule be and the same is hereby adopted as a local rule in all bankruptcy cases and proceedings commenced in this Judicial District:

(a) Emergency Resolution

The purpose of this rule is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and pro-

ceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

(b) Filing of bankruptcy papers

The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district

court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) A proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3)(B), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3) (A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; proceedings for the sale of property, except those sales arising in related proceedings; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

(e) District Court Review

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A

and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of the time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2) (A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify; in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (e)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order or judgment of the district judge after review.

(f) Local Rules

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

(g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

(h) Effective Date and Pending Cases

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982, shall be deemed referred to that judge.

Dated in Madison, Wisconsin, this 24th day of December, 1982.

/s/ Barbara B. Crabb
BARBARA B. CRABB
CHIEF JUDGE
/s/ John C. Shabaz
JOHN C. SHABAZ
U.S. DISTRICT JUDGE