In re SOUTH PORTLAND SHIPYARD AND MARINE RAILWAYS CORP.,

and

Railway Marine Corporation, Debtors.

Civ. No. 83–0240 P.

United States District Court, D. Maine.

Sept. 14, 1983.

Robert Checkoway, Preti, Flaherty & Beliveau, Portland, Me., for debtors.

George Marcus, Portland, Me., for NETS.

Daniel Amory, Portland, Me., for Peter Drivas.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., for Maine State Bar Assoc.

Gerald F. Petruccelli, Esq., Portland, Me., for Northern Nat'l Bank.

Gregory A. Tselikis, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for the Creditor's Committee.

Peter Greenleaf, Asst. U.S. Trustee, Portland, Me., for U.S. Trustee.

## OPINION & ORDER

CARTER, District Judge.

In November, 1982, both debtors in this proceeding filed petitions under Chapter 11 of Title 11 of the United States Code. On January 21, 1983, Near East Technological Services, Inc. (NETS) filed a proof of equity interest in each case, claiming to own 100% of the equity interest of each debtor corporation. Shortly thereafter, NETS filed a request for allowance of its proofs of equity interest under 11 U.S.C.A. §§ 506(b) and 502 (1979). The debtors both filed objections to NETS' proofs of equity interest. In addition, on March 1, the president of both debtor corporations, Peter Drivas, moved to dismiss NETS' requests for allowance of its proofs of equity interest on the grounds, *inter alia,* that the Bankruptcy Court lacked jurisdiction over the subject matter.

The Bankruptcy Court, 31 B.R. 770, held a joint hearing on Drivas' motions to dis-

miss and granted the motions by order dated June 29, 1983. Finding the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) controlling, the Bankruptcy Judge interpreted that case to find that neither the Bankruptcy Court nor the District Court had jurisdiction to hear the instant case under 28 U.S.C.A. § 1471 (Supp. 1983), the jurisdictional section of the Bankruptcy Reform Act. The Court also rejected the argument that the District Court retained jurisdiction to hear bankruptcy cases under either 28 U.S.C.A. § 1331 or § 1334 (1976). Finally, the Court determined that even if the District Court did have jurisdiction, the Bankruptcy Court still could not hear this case because Local Rule 41, which provides for the automatic reference to the bankruptcy judges of cases that would have been heard by them under Section 1471, is invalid. The rule's invalidity, according to the court below, stems both from the lack of authority for its promulga-tion and from its overbroad delegation of the District Court's authority in light of *Northern Pipeline* and F.R.Civ.P. 53.

 Recognizing the importance of the jurisdictional question, the Bankruptcy Judge certified his order for immediate review by this Court.[1] NETS filed an appeal of the order as well. Because of the pendency of the certification of the appealed order, the Court has stayed the running of the usual appellate procedures. Having merged these review proceedings, this Court held a hearing at which the parties and several *amici curiae* argued the issue of jurisdiction.[2]

## I. THE EFFECT OF THE HOLDING IN NORTHERN PIPELINE

 Although the exact meaning of the Supreme Court's decision in *Northern Pipeline* has been the topic of much debate, there is no doubt that the Supreme Court struck down the Bankruptcy Reform Act's grant of jurisdiction to the Bankruptcy

1. The Bankruptcy Judge certified this case to the District Court under authority of Rule 41(e)(3) and (e)(2)(ii), after it had declared that rule and the exercise of jurisdiction by the District Court to be invalid. The court noted the apparent incongruity of such a certification, and the query has been raised as to whether a case brought for review under a rule that has been declared invalid is actually in District Court.

It is a truism that every court has the jurisdiction to determine its own subject matter jurisdiction. *See, e.g., Ilan-Gat Engineers, Ltd. v. Antigua International Bank,* 659 F.2d 234 (D.C.Cir.1981). In this case the Bankruptcy Court has determined the District Court's jurisdiction. That determination was rendered by a body which after *Northern Pipeline* has no independent grant of jurisdiction and which can act in cases of this sort only with power derived from the District Court. Therefore, the Bankruptcy Court's determination is a preliminary, not final, determination by this court of its own jurisdiction. *See Johnson v. MacCoy,* 278 F.2d 37 (9th Cir.1960). Hence, that determination of the invalidity of Rule 41 does not deprive this Court of the opportunity to determine the scope of its own jurisdiction. Realizing this, the Bankruptcy Court stayed the effect of its orders. During the stay Rule 41 and its review provisions remain in effect, just as Section 1471(c) remained in effect during the stay of the Supreme Court's opinion in *Northern*

*Pipeline.* This Court, therefore, has authority to hear this case and will proceed to determine its primary and the Bankruptcy Court's derivative subject matter jurisdiction.

2. After the issuance of the Bankruptcy Court's order, but prior to the hearing in this Court, the parties entered into a settlement agreement whereby Peter Drivas conveyed all his interest in the debtor corporations to NETS. At the time of the hearing, the parties were awaiting the Bankruptcy Court's approval of a release document issued by the debtors to Drivas as part of the settlement. Given the change in the procedural posture of the case, the Court requested that the parties brief and argue the issue of mootness. Consideration of the arguments presented convinces the Court that this case is not moot. Although Peter Drivas is no longer party to the dispute, NETS' proofs of equity interest, objected to by the debtors, must be determined by the Bankruptcy Court under 11 U.S.C.A. § 502(b) (1979). Moreover, there are numerous other live issues in these Chapter 11 proceedings which will require resolution by the court, including confirmation of the reorganization plan, decisions on motions to compel the debtor to assume or reject leases, and settlement of debts with all creditors. Before the court can make any of these determinations, the foundational question of the subject matter jurisdiction of the Bankruptcy and District Courts must be decided.

Courts. 458 U.S. at 85, 102 S.Ct. at 2879. Beginning at this point, the Bankruptcy Judge below correctly determined that he could hear the instant case only if there remains some jurisdiction in the District Court over bankruptcy matters and, further, if Local Rule 41 of the United States District Court validly empowers the Bankruptcy Court to exercise the District Court's jurisdiction.

A careful reading of the *Northern Pipeline* opinion under sound principles of case analysis yields the ineluctible conclusion that the Bankruptcy Reform Act's grant of jurisdiction to the District Courts in 28 U.S.C. § 1471(a) and (b) was left intact by the Supreme Court. A court, even the Supreme Court, may decide only the case before it, and the only challenge before the Court in *Northern Pipeline* was that to the jurisdiction of the Bankruptcy Court. No challenge to the jurisdiction of the District Court was raised because *Northern Pipeline* involved Marathon's motion to dismiss a state law contract claim brought in the Bankruptcy Court.

That the opinion deals only with the jurisdiction of the Bankruptcy Court is plainly demonstrated throughout. *See White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *Braniff Airways, Inc. v. Civil Aeronautics Board,* 27 B.R. 231 (N.D.Tex. 1983), *aff'd* 700 F.2d 214, 215 (5th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). Justice Brennan broadly characterized the issue in the case as "whether the assignment by Congress *to bankruptcy judges* of the jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (1976 ed., Supp. III) violates Article III of the Constitution." 458 U.S. at 52, 102 S.Ct. at 2862 (emphasis added). Although Justice Rehnquist objected to the breadth of that characterization in his concurring opinion, he, too, found the Bankruptcy Act's infirmity to lie in that part which "enables a *Bankruptcy Court* to entertain and decide Northern's lawsuit over Marathon's objection." *Id.* at 91, 102 S.Ct. at 2882 (Rehnquist, J. concurring) (emphasis added). Moreover, the sections

of the plurality opinion that the Court signals as its holding deal specifically with the Bankruptcy Court's exercise of jurisdiction. For example, the Court holds that the Bankruptcy Act does not establish a constitutionally permissible adjunct scheme of adjudication because the Act carries the possibility of an unwarranted encroachment upon the judicial power of the United States, the exercise of which our Constitution reserves to Art. III courts. *Id.* at 77, 102 S.Ct. at 2874–75. Since the District Courts are Art. III courts, the Supreme Court is obviously not concerned with their exercise of Art. III power. The patent focus of the decision is the exercise of judicial power *by the Bankruptcy Courts.* This conclusion is further reinforced by the plurality's own gloss on the meaning of its decision in which it "concluded that the broad grant of jurisdiction *to the bankruptcy courts* contained in § 241(a) is unconstitutional." *Id.* at 87, 102 S.Ct. at 2880 (emphasis added).

Plainly, therefore, *Northern Pipeline* does not address the issue of the District Court's jurisdiction to hear bankruptcy cases. Some bankruptcy courts, like the one below, have mistakenly strained to find that the Supreme Court in Northern Pipeline also struck down the grants of jurisdiction to the District Courts contained in 28 U.S.C. in § 1471(a) and (b). *See, e.g., In re Seven Springs Apartments,* 33 B.R. 458, 10 B.C.D. 634 (Bkrtcy.N.D.Ga.1983); *In re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn. 1983); *Winters National Bank & Trust v. Schear Group,* 25 B.R. 463, 469 (Bkrtcy.S.D. Ohio 1982). For the most part, these courts base their analysis on congressional intent to eliminate a bifurcated system of bankruptcy jurisdiction by placing all bankruptcy jurisdiction in a single forum, the Bankruptcy Court. The jurisdictional grants to the District Courts in § 1471(a) and (b) are viewed as non-grants, mere legitimating devices which are inseverable from § 1471(c)'s grant to the Bankruptcy Courts of the exercise of "all of the jurisdiction conferred by this section on the district court." 28

U.S.C. § 1471(c).[3] Without doubt Congress did intend to eliminate the bifurcated system of bankruptcy jurisdiction with the enactment of Section 1471(c). Congress' far more fundamental intent, however, was to establish a functioning bankruptcy system. A determination that jurisdiction exists in the District Court is essential if that purpose is to be attained.

The Bankruptcy Courts have tried to place the Supreme Court's imprimatur on their conclusion that Section 1471(a) and (b) must fall with Section 1471(c) by pointing to Justice Brennan's reference to "the facade of a grant to the district courts," *Northern Pipeline,* 458 U.S. at 86, 102 S.Ct. at 2879, and to Justice Rehnquist's agreement with the plurality that "this grant of authority is not readily severable from the remaining grant of authority to Bankruptcy Courts under § 241(a)." *Id.* at 91, 102 S.Ct. at 2882 (Rehnquist, J. concurring). A study of the words of Justices Brennan and Rehnquist in their proper context reveals that the § 1471(a) and (b) grants of bankruptcy jurisdiction to the District Courts retain vitality. In assessing the grant of bankruptcy jurisdiction to the Bankruptcy Courts behind the facade of a grant to the District Courts, Justice Brennan states that:

> § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of the "essential attributes of judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Id.* at 87, 102 S.Ct. at 2879–80. The Court's conclusion that "the broad grant of jurisdiction to the bankruptcy courts" is unconstitutional indicates that it is subsection 1471(c) which has impermissibly turned subsections (a) and (b) into a facade. It is that subsection of the statute alone which must fall. As the Court suggested in *Braniff Airways, Inc. v. Civil Aeronautics Board,* for the judicial power to have been "impermissibly removed" from the District Courts by subsection (c), it must have first been vested in those courts in subsections (a) and (b). 27 B.R. 231. Nowhere does the Supreme Court express disapproval of the grant of jurisdiction to the District Courts.

It is also plain that Justice Rehnquist's reference to inseverability was not addressed to the possibility of severing subsections (a) and (b), containing the jurisdictional grant to the District Courts, from subsection (c), containing the jurisdictional grant to the Bankruptcy Court. Justice Rehnquist's concurring opinion expresses the concern that the plurality sweeps too broadly in finding the whole grant of jurisdiction *to the Bankruptcy Court* invalid. He would find unconstitutional only so much of the Act as enables the Bankruptcy Court to decide the particular type of state law contract claim brought by Northern Pipeline, 458 U.S. at 90, 102 S.Ct. at 2881 (Rehnquist, J. concurring). Justice Rehnquist joins the judgment of the Court only because he finds the grant of jurisdiction to the Bankruptcy Court to hear state law claims indivisible from what may be, on a proper adjudication, a permissible grant to hear other types of claims. The inability of the Bankruptcy Court's jurisdiction to be divided as it relates to different types of claims is demonstrated in the language of § 1471(c) which gives to the Bankruptcy Court "all of the jurisdiction" which had been neatly divided by type in the separate grants to the District Courts in § 1471(a) and (b).

---

**3.** Title 28 U.S.C.A. § 1471 (Supp.1983) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

That Justice Rehnquist based his decision on the difficulty of separating the grant of bankruptcy jurisdiction over core matters from that over related matters rather than on the inseverability of the subsections of the statute is brought into sharper focus by his specific agreement with note 40 of the plurality opinion.[4] In note 40, Justice Brennan justifies the breadth of his holding by pointing out the impossibility of dividing the jurisdiction granted in § 1471(c) on a claim-by-claim basis:

> It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over those matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim by claim basis.

*Id.* at 87, 102 S.Ct. at 2880. It appears that neither justice was willing or able to divide the unitary grant of jurisdiction to the Bankruptcy Courts in § 1471(c). Their focus on that jurisdictional grant, however, and their failure to discuss the jurisdiction of the District Courts in bankruptcy matters shows without doubt that they were both willing and able to sever the unconstitutional subsection (c) from the rest of the statute, leaving subsections (a) and (b) intact to serve as a basis for District Court jurisdiction over bankruptcy matters.

Rejecting this idea, several courts have found an implicit *coup de grace* to the bankruptcy jurisdiction of the District Courts in the Supreme Court's stay of its judgment in *Northern Pipeline* and its failure to remand the case to the District Court. As the argument goes, the stay would not have been necessary if the District Courts could lawfully take over for the Bankruptcy Courts. *See, e.g., In Re Conley,* 26 B.R. 885 (Bkrtcy. M.D.Tenn.1983). This extrapolation has some appeal. What seems far more likely, however, is that the Supreme Court issued the stay to protect the District Courts from being inundated by bankruptcy cases.

The Supreme Court has discussed a court's inherent power to grant stays to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants. In a case remanding the denial of a stay of antitrust proceedings in one court pending a decision in another court, the Court stated that stays which cause no great hardship to the litigants and which serve the public welfare and convenience are permissible exercises of the court's power. *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Surely the same considerations must have influenced the Supreme Court's unusual decision to exercise its inherent power to issue the stay in

---

**4.** At oral argument in the companion case of *Romeo J. Roy, Inc. & Modern Plumbing & Heating, Inc. v. Northern National Bank,* 32 B.R. 1008, (D.Me.1983), one counsel made the facially persuasive argument that Justice Rehnquist's use of the term "severable" in his concurrence represents the conscious employment of a term of art and invokes the constitutionally-based doctrine of severability. That doctrine is discussed generally in 16 Am.Jur.2d § 260 (1979); *see also El Paso & N.R. Co. v. Gutierrez,* 215 U.S. 87, 30 S.Ct. 21, 54 L.Ed. 106 (1909), *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

After a close review of the *Northern Pipeline* opinion and particularly of the context of Justice Rehnquist's use of the term "severable," *see* text, this court is satisfied that that Justice did not use that word as a term of art. Rather, I conclude that he used it as it is used in common parlance to indicate that something is capable (or not readily so, as Justice Rehnquist said) of being divided into parts. *See* J. Stein, *The Random House Dictionary of the English Language,* 1307 (1966).

*Northern Pipeline.* Although the District Court is available as a forum for bankruptcy adjudication, its use in that capacity was totally unanticipated because of those provisions in the 1978 Bankruptcy Act struck down by the Court. Therefore, a sudden deluge of bankruptcy cases on the District Courts would work a tremendous hardship on the judicial system and its litigants. It was this deluge which the Supreme Court, acutely aware of the heavy caseloads already clogging District Court dockets, tried to avoid.

The stay also effectuated, at least temporarily, one of Congress' purposes in enacting the Bankruptcy Act of 1978, namely, to keep bankruptcy cases out of the District Courts, which were viewed as having neither the time, expertise, nor inclination to handle them. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 14–15 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, *reprinted in* 2 app. *Collier on Bankruptcy,* 14–15 (15th ed. 1982). Recognizing that its decision, by leaving jurisdiction over bankruptcy matters only in the District Courts, would restructure the bankruptcy system in a way that would run counter to an element of the Congressional intent, the Court issued the stay: "We think it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose." *Northern Pipeline,* 458 U.S. at 87, n. 40, 102 S.Ct. at 2880, n. 40. It is clear, then, that rather than heaping the bankruptcy caseload upon the already staggering District Court dockets, the Supreme Court stayed its judgment in an effort to give interim effect to one of the legislative purposes underlying the Bankruptcy Reform Act while also serving its own and the public's interest in maintaining a functionally efficient federal court system.

The efforts of the Bankruptcy Courts to piece together an invalidation of District Court bankruptcy jurisdiction from the nooks and crannies of the *Northern Pipeline* decision are not persuasive. The challenge presented by Marathon was to the exercise of jurisdiction by the Bankruptcy Court, and it was the grant of that jurisdiction that the Supreme Court held unconstitutional. The grant of bankruptcy jurisdiction to the District Courts in § 1471(a) and (b) remained unchallenged and substantially undiscussed in *Northern Pipeline.*[5] Therefore, the District Court may, now that the stay has expired, exercise its jurisdiction under those subsections.

## II. THE VALIDITY OF LOCAL RULE 41

■ The determination that jurisdiction to hear bankruptcy cases and proceedings exists in the District Court is not the end of the inquiry, however. The Court must examine the legal efficacy of the delegation of the exercise of that jurisdiction to the Bankruptcy Courts under Local Rule 41 of the United States District Court. The rule, entitled "Administration of Bankruptcy System," was drafted by the Judicial Conference to quell the chaos that was foreseen for the bankruptcy system following expiration of the Supreme Court's stay of its decision in *Northern Pipeline.* The rule was endorsed by the First Circuit Judicial Council and promulgated by this Court upon the order of that Council.[6] It became effective December 25, 1982.

---

5. Because this Court finds that it has bankruptcy jurisdiction under Section 1471(a) and (b), it is not necessary to consider 28 U.S.C.A. §§ 1331 and 1334, the other possible bases of District Court bankruptcy jurisdiction that were discussed and rejected by the Bankruptcy Court below.

6. The order provides in its entirety:
 The Administrative Office of the United States Courts has circulated the attached proposed rule with a recommendation that the Circuit Councils order the district courts to promulgate it as an emergency measure for administration of the bankruptcy system after December 24, 1982, when the stay issued by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* [458 U.S. 50], 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982) expires. The rule is designed to allow administration of the system in the absence of congressional action or an extension of the *Northern Pipeline* stay. We recognize that the Judicial

Peter Drivas' motions to dismiss challenge the rule as void. Although the memorandum in support of the motions suggests that Rule 41 was improper because it was promulgated by the District Court rather than by the Supreme Court, there is ample statutory authority for the issuance by the District Court of rules to aid it in the con-

Conference of the United States has recommended such an approach on a nationwide basis, believing that in this highly unusual set of circumstances a uniform national approach to the problem is administratively desirable. While we as judges do not precommit ourselves on any legal or constitutional questions which may arise concerning this rule, as the Judicial Council of this Circuit we follow the recommendation of the Judicial Conference and we therefore "require that the attached rule for the administration of the bankruptcy system in this Circuit be adopted by the district courts of this Circuit pursuant to 11 U.S.C. § 105, and it is so ordered."

**7.** Bankruptcy Rule 927 authorizes each District Court to "make and amend rules governing practice and procedure under the Act not inconsistent with these rules." Bankruptcy Rule 927 was replaced by Bankruptcy Rule 9029 on August 1, 1983, when the Supreme Court promulgated new Rules of Practice and Procedure in Bankruptcy to govern bankruptcy practice under the Bankruptcy Reform Act. Rule 9029 is substantially the same as Rule 927 except that it provides the Bankruptcy Courts rather than the District Courts with rule making power. The order of the Supreme Court promulgating the new Bankruptcy Rules stated that the new rules would apply "except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice, in which event the former procedure applies." Since after *Northern Pipeline* the District Court rather than the Bankruptcy Court has jurisdiction over bankruptcy cases, the application of Rule 9029 authorizing rule making by the Bankruptcy Courts is infeasible. Therefore, this Court will apply old Bankruptcy Rule 927.

F.R.Civ.P. 83 provides: "Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules."

Finally, 28 U.S.C.A. § 2071 (1982) provides: "The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with the Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

duct of its business, including, presumably, the exercise of its unexpectedly burdensome bankruptcy jurisdiction. Bankruptcy Rule 927, Civil Rule 83 and 28 U.S.C.A. § 2071 (1982) all provide the District Courts with substantially the same authority to promulgate rules governing their practice and procedure.[7] Although these grants of authori-

Since the Judicial Conference and Councils drafted and ordered the promulgation of Rule 41, some courts have found authority for that promulgation in 28 U.S.C. § 332(d)(1) and (2). That section provides:

(1) Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit.

(2) All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council.

*White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *Moody v. Martin,* 271 B.R. 991, 999 (Bkrtcy.W.D.Wis.1983).

The extent of this grant of authority to the Judicial Councils is not well delineated by the cases arising under it. Although the language is certainly broad enough to encompass orders setting forth substantive procedural rules rather than just housekeeping details, the existence of other procedural rulemaking provisions indicates that such a use of Section 332 would be redundant and ill-advised.

This construction is supported by Wright and Miller:

Rules designed to improve district court procedure may seem authorized by the broad terms of § 332(d). Nonetheless, the other provisions for adopting formal rules of procedure suggest strongly that the judicial councils should stay out of this field. Primary responsibility for adopting rules of procedure for both the district courts and the courts of appeals lies in the Supreme Court. In addition, district courts and the courts of appeals are authorized to adopt their own rules, not inconsistent with the rules adopted by the Supreme Court. No matter how broad the consultative procedure employed, the judicial councils should not take to themselves a supplementary power to dictate rules to the district courts. The line between rules of "procedure" and mere "administration of the business" of the district courts may prove as difficult to draw as the line between administration and adjudication. If the problem is one touched by the Federal Rules adopted by the Supreme Court, however, the line should be drawn to exclude the judicial councils. 16 C. Wright, A. Miller, E. Cooper, E. Cressman, *Federal Practice & Procedure,* § 3939, at 299 (1977) (footnotes omitted). Since Rule 41 is clearly a procedural rule, prescribing an entire system of reference and review, it goes far beyond its title, "Administration of the Bank-

ty should not be construed as permitting the District Court to create jurisdiction in the Bankruptcy Courts, *see,* e.g., F.R.Civ.P. 82, it is plain that they are broad enough to allow some type of reference of bankruptcy matters. *Moody v. Martin,* 27 B.R. 991, 999 (Bkrtcy.1983). The contours of that reference are of crucial importance, however, since Section 2071, Civil Rule 83 and Bankruptcy Rule 927 all contain the express limitation that procedural rules promulgated by the Court shall not be inconsistent with Acts of Congress or with the other rules of either civil procedure or bankruptcy.

Rule 41 provides for the referral "to the bankruptcy judges of this district [of] all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." Rule 41(c)(1). Four exceptional circumstances necessitating the referral are recited in the section of the rule entitled "Emergency Resolution." Rule 41(a). Although the initial reference is automatic, the reference may be withdrawn at any time by the motion of the District Court or on timely motion of a party. Rule 41(c)(2).[8] The rule provides the Bankruptcy Judges with all the powers necessary to handle bankruptcy cases. Bankruptcy Judges may not, however, conduct jury trials, hear appeals or conduct proceedings for injunctions against a court or for contempt. Rule 41(d)(1)(A)(D). For purposes of review, the rule distinguishes between related proceedings and nonrelated proceedings, which seem to coincide with what were called core proceedings in the terminology of older bankruptcy learning. Related proceedings are "those civil proceedings that in the ab-

sence of a petition in bankruptcy, could have been brought in a district court or state court." Rule 41(d)(3)(A). Related claims do not include a number of types of claims that might ostensibly fit the initial definition but which are integrally related to the administration of the estate. For example, allowance of and objection to claims against the estate, like the one filed by NETS in this proceeding under 11 U.S. C.A. § 502, are not related proceedings. The distinction is important because the orders and judgments of Bankruptcy Judges in nonrelated proceedings are dispositive and will be reviewed only if a timely appeal is filed or if the order or judgment is certified for review by the Bankruptcy Judge. Rule 41(d)(2), (e)(2)(A)(i) & (ii). In related proceedings the Bankruptcy Judge must submit findings, conclusions and a proposed judgment or order for review by the District Court, unless the parties consent to entry of the Bankruptcy Judge's order. Rule 41(d)(3)(B) and (e)(2)(A)(iii). The review in both types of cases is *de novo,* so the District Court need give no deference to the findings of the Bankruptcy Judge. Rule 41(e)(2)(B).

In sculpting Rule 41 the judicial council has obviously taken great pains to develop a system of reference for bankruptcy cases which meets the perceived goals of § 1471 in the context of the requirements of *Northern Pipeline.* Thus, the rule tries to incorporate at least some of the limiting features which the plurality of the Supreme Court found lacking in the Bankruptcy Court's exercise of jurisdiction under Section 1471(c).[9] The Supreme Court, in

---

ruptcy System," and, therefore, is not readily justifiable under the grant of authority contained in Section 332.

Another possible source of statutory authority for promulgation of the Rule which has been suggested by many courts and the Judicial Council is 11 U.S.C.A. § 105(a) (1979). *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 10 B.C.D. 32; *In Re Braniff Airways,* 27 B.R. 231 (N.D.Tex.), *aff'd,* 700 F.2d 214 (5th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). Section 105(a) provides that "the bankruptcy court may issue any order ... necessary or appropriate to carry out the

provisions of this title." Since the statute refers to the Bankruptcy Court, it cannot be read to provide authority for rule making actions of the District Court.

8. Despite the language of Rule 41(c)(2), the Court must take judicial notice of the fact that in this district no reference to the Bankruptcy Court has ever been withdrawn. Requests for withdrawal have been routinely denied by the District Court without hearing or argument.

9. Whether the rule, as applied in this case, is successful in meeting the requirements set

*Northern Pipeline,* however, was addressing the establishment of an adjunct system *by Congress.* The creation of such a system by the Judicial Branch is quite a different matter. As Section 2071 of the Judicial Code, Rule 83 F.R.Civ.P., and Bankruptcy Rule 927 make clear, any adjunct system established *by rule of the District Court* must not be inconsistent with the requirements of the referral system set forth in F.R.Civ.P. 53 and incorporated in Bankruptcy Rule 513.[10] I conclude that Rule 41 fails this test.

Like the plurality of the Supreme Court in *Northern Pipeline,* the drafters of Rule 53 were sensitive to the traditional rights of litigants to have their cases passed upon by a court or jury in the first instance. *See* 9 Wright & Miller, *Federal Practice & Procedure* § 2603 at 781 (1971). Thus, Rule 53(b) provides that reference to a master shall be the exception and not the rule. In drafting Rule 41, the Judicial Council ostensibly tried to avoid conflict with this requirement of Rule 53 by stating that exceptional circumstances mandated a blanket reference. These included the unanticipated failure of the jurisdictional grant to the Bankruptcy Courts, the intent of Congress to refer bankruptcy matters to Bankruptcy Judges, the need for expertise in the adjudication of bankruptcy matters, and the administrative difficulty of the District Court's assuming

---

forth by the *Northern Pipeline* plurality need not be discussed. As noted earlier, the subject of this case, the objection to NET's proofs of claim, is a core matter. The only clear principle to be derived from *Northern Pipeline,* as limited by the necessary vote of one of the concurring justices, is that it is unconstitutional for Bankruptcy Courts, which lack the attributes of Art. III courts, to exercise jurisdiction over state common law actions related only peripherally to a bankruptcy adjudication. *Moody v. Martin,* 27 B.R. 991 (Bkrtcy.W.D.Wis. 1983). While the congressional scheme to have all core and related matters heard by the Bankruptcy Court is invalid because of the unitary nature of the grant of jurisdiction, the limited holding of *Northern Pipeline* would seem to pose no *constitutional* barrier to having core matters heard by non-Art. III courts under some other scheme.

10. The language of Rule 53(b) makes explicit that the rule is intended to govern fully in all circumstances the exercise of the District Court's power to refer cases. The rule states that reference "shall be the exception and not the rule." F.R.Civ.P. 53(b). In respect to jury cases, it provides that "*a reference* shall be made *only* when the issues are complicated." *Id.* (emphasis added). In respect to non-jury cases, it states (excluding only matters of account and those involving difficult computation of damages) "*a reference* shall be made *only* upon a showing that some exceptional condition requires it." *Id.* (emphasis added). In the face of such all-encompassing language, it is apparent that from whatever source the power to refer cases comes to be lodged in the District Court, *the exercise* of that power is governed by Rule 53 in every case where there does not exist an independent statutory grant of authority to refer cases to a specific adjunct tribunal. Thus, the power cannot be exercised over cases that do not meet the criteria set out in Rule 53(b) and the District Court cannot give to the referee, by way of reference, any powers to act in a case beyond those set out in Rule 53(e).

Rule 9031 of the new Bankruptcy Rules went into effect on August 1, 1983, a month after the initial decision in this case but before this review. It provides that "Rule 53 F.R.Civ.P. does not apply in cases under the Code." Although the new rule might superficially seem to preclude the need for a determination that Rule 41 is not inconsistent with Rule 53, that is not the case. Rule 9031 was enacted because the new Code, if left intact, would have made the reference of bankruptcy cases superfluous. This is demonstrated by the Advisory Committee's discussion of Rule 9031:

> There does not appear to be any need for the appointment of special masters in bankruptcy cases by bankruptcy judges. The Advisory Committee, therefore, has decided that former Rule 513 not be continued in the Rules and that Rule 53 F.R.Civ.P. not be made applicable.

The new Code was not left intact, however; the Supreme Court in *Northern Pipeline* found unconstitutional the grant of jurisdiction to the Bankruptcy Court. Rule 9031, which specifically addressed the situation in which all bankruptcy cases are to be heard by Bankruptcy Judges in the first instance, is incongruous in the situation created by *Northern Pipeline* whereby the District Court is to exercise bankruptcy jurisdiction. The Supreme Court's April 25, 1983 Order promulgating the new rules makes clear that the new rules will not apply when "in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice," in which case "the former procedure applies." Since application of Rule 9031 is infeasible, the old procedure incorporating Rule 53 applies, and Rule 41 must be consistent with that rule.

the bankruptcy caseload on short notice. The Supreme Court has indicated, however, that exceptional circumstances justifying reference of cases are to be narrowly circumscribed. In *LaBuy v. Howe Leather Co.,* 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), the Court rejected the petitioner's contentions that docket congestion and the unusual complexity of the antitrust cases to be heard provided an adequate basis for their reference to a master. Three of Rule 41's exceptional circumstances deal in essence with docket congestion and case complexity; under *LaBuy,* therefore, they cannot support a blanket reference. *See, also, In re Seven Springs Apartments,* 33 B.R. 458, 10 B.C.D. 634 (Bkrtcy. N.D.Ga.1983).

The fourth exceptional circumstance cited in Rule 41, congressional intent that bankruptcy cases be heard by Bankruptcy Judges, has been determined a sufficient basis for allowing blanket reference of certain cases under the Magistrates Act, 28 U.S.C.A. §§ 631–639 (Supp.1983), a statute which has been discussed as one of the models for Rule 41. *See In re Seven Springs Apartments,* 33 B.R. at 504, 10 B.C.D. at 661. It cannot support the blanket reference in this case, however. In *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), a District Court order for blanket reference to United States Magistrates of certain Social Security Act determinations was upheld despite the fact that exceptional circumstances requiring reference were not found on a case-by-case basis. The Court held that Congress, in enacting the Magistrates Act, had established an adjunct adjudicatory system different from the one in Rule 53. Since the Magistrates were not supposed to be special masters and their duties had been set forth in a valid act of Congress, the District Court's order was not repugnant to Rule 53. The instant case presents a different situation. The adjunct bankruptcy scheme set up by Congress was invalidated by the Supreme Court in *Northern Pipeline.* Until Congress acts again, therefore, there is no free-standing Congressional authority for the exercise by the Bankruptcy Courts of any jurisdiction. Such authority can only come from a grant of authority by the District Court through its exercise of its reference power. The District Court can only exercise its reference power in accordance with Rule 53. In exercising its Rule 83 rule making power to achieve a reference, in this case, the District Court is explicitly required to conform to the Rule 53 requirements. Thus, there is no path by which authority to act can come to rest in the Bankruptcy Courts outside the requirements of Rule 53. Since no exceptional circumstances have been shown justifying blanket reference of bankruptcy cases to the Bankruptcy Judges, Local Rule 41 is not consistent with F.R.Civ.P. 53 and is thus invalid.

The delegation of authority to the Bankruptcy Judges under Rule 41 is also broader than that provided for in Rule 53. *In re Matlock Trailer,* 27 B.R. 318 (D.C.D.Tenn. 1983). Under Rule 53(e) the special master may never enter a final judgment. By contrast, under Rule 41 the Bankruptcy Judge's judgments and orders in nonrelated matters become effective upon entry and will be reviewed only upon appeal or certification. Again, in trying to conform to distinctions drawn by the Supreme Court in *Northern Pipeline* for congressionally authorized adjunct adjudicatory schemes, the drafters of Rule 41 have run afoul of Rule 53.

Rule 41 is inconsistent with Rule 53 in other respects as well. Rule 53 provides that the master shall be paid by the parties. Bankruptcy Judges, to whom bankruptcy cases are to be referred are federal employees, paid by the United States Government. Under Rule 41, Bankruptcy Judges may not conduct jury trials; Rule 53 permits special masters to hear jury actions. Moreover, Rule 53(e)(2) establishes a clearly erroneous standard for review of the special master's findings in contrast to the *de novo* review mandated by Rule 41.

Similar inconsistencies with other provisions of the Bankruptcy Rules can be, and have been, detailed. *See, e.g., In re Conley,* 26 B.R. 885; *In re Seven Springs Apart-*

*ments,* 33 B.R. 458, 10 B.C.D. 634. Plainly, however, the glaring inconsistencies between Local Rule 41 and F.R.Civ.P. 53 indicate that the District Court has used its rule making power impermissibly to introduce a basic procedural innovation. Such use of the rule making power was condemned by the Supreme Court in *Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), a case in which the District Court used its rule making power to order the taking of depositions in an admiralty case when the civil rules on depositions had not been adopted as part of the General Admiralty Rules.

■ Because Rule 41 is inconsistent in many important respects with F.R.Civ.P. 53, it is an invalid exercise of the District Court's power under either Civil Rule 83, Bankruptcy Rule 927, or 28 U.S.C. § 2071.

The Bankruptcy Court has no power under the invalid rule to hear the instant actions. The Court must, therefore, affirm the dismissals ordered by the Bankruptcy Court. Although this Court could specifically hear or refer a bankruptcy case properly before ·it, the District Court may not exercise its jurisdiction to hear bankruptcy matters that have been brought exclusively in the Bankruptcy Court.[11]

The judgment of the Bankruptcy Court is AFFIRMED.

So ORDERED.

11. The Court is mindful of the concern expressed by counsel that its ruling in this case might leave in doubt the validity of prior orders and dispositions entered by the Bankruptcy Court pursuant to Rule 41. The question of the retroactive effect of today's ruling is not before the Court, however, and sound principles of judicial restraint mandate that that issue be left in abeyance until it is raised by an appropriate case.