FAIRCHILD, Senior Circuit Judge.
 

 On February 11, 1982 the debtor, Mark Stewart, filed a Chapter 7 petition in bankruptcy. Plaintiff-appellee, Dorothy Stewart, then filed a complaint in bankruptcy to determine the dischargeability of a judgment debt owed her by the debtor. A trial on the issue of the dischargeability of the judgment debt was conducted before a bankruptcy judge on December 1, 1982 and on February 14, 1983 judgment was rendered finding the debt non-dischargeable. The debtor appealed from the judgment and moved to vacate it. Because of the holding in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) the debtor contended that the bankruptcy judge lost jurisdiction on December 24, 1982 when the stay of
 
 Northern Pipeline
 
 expired. He argued that the Interim Rule by which the district court had referred all bankruptcy cases to bankruptcy judges was an unconstitutional delegation of authority. Concluding that the Interim Rule is valid, the district court denied the motion to vacate and affirmed the judgment. We affirm.
 

 A.
 

 To assess the validity of the Interim Rule by which the district courts have referred cases to the bankruptcy judges our first inquiry must be directed at the Supreme Court’s decision in
 
 Northern Pipeline
 
 and its effect, if any, on the jurisdiction of the district courts in bankruptcy matters. Although the debtor disclaims any contention that the district courts lack jurisdiction to hear bankruptcy cases we will address the question briefly. Some bankruptcy judges have read the
 
 Northern Pipeline
 
 decision as declaring 28 U.S.C. § 1471 (and corresponding transition provisions) unconstitutional
 
 in toto,
 
 leaving the district courts without jurisdiction to hear bankruptcy matters and consequently unable to refer such matters to bankruptcy judges under the Interim Rule.
 
 [1]
 

 See, e.g.,
 
 
 *129
 

 In re Seven Springs Apartments,
 
 33 B.R. 458 (Bkrtcy.N.D.Ga.1983);
 
 In re Conley,
 
 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983);
 
 Winters National Bank and Trust v. Schear Group,
 
 25 B.R. 463, 469 (Bkrtcy.S.D.Ohio 1982). These judges have taken the position that Congress intended to eliminate the bifurcated system of bankruptcy jurisdiction by placing all bankruptcy jurisdiction in a single forum, the bankruptcy court [during the transition, the bankruptcy judge]. The jurisdictional grants to the district court in § 1471(a) and (b) are viewed as non-grants, mere legitimating devices inseverable from § 1471(c)’s grant to the bankruptcy court of “all of the jurisdiction conferred by this section on the district court.” 28 U.S.C. § 1471(c). In their view, Congress envisioned the district courts as having
 
 only
 
 the appellate review granted in 28 U.S.C. § 1334, as amended by the 1978 Act.
 
 [2]
 
 Since the Supreme Court declared the grant of jurisdiction in § 241(a) of the 1978 Act to the bankruptcy courts (and to the bankruptcy judges during the transition) to be invalid and further found that this grant was non-severable, these judges have concluded that jurisdiction over bankruptcy proceedings does not exist in any court. We do not agree with this view.
 

 While it is true that Congress did intend to eliminate the bifurcated system of bankruptcy jurisdiction with the enactment of § 1471(c), and the corresponding transition provisions, “Congress’ far more fundamental intent ... was to establish a functioning bankruptcy system.”
 
 In re South Portland Shipyard and Marine Railways Corp.,
 
 32 B.R. 1012, 1016 (Bkrtcy.D.Me.1983). The opinion in
 
 Northern Pipeline
 
 must be read in the light of that intent.
 

 The Supreme Court’s decision in
 
 Northern Pipeline
 
 did not eliminate the jurisdiction of the district courts over bankruptcy matters. The issue in the case was whether Congress could constitutionally invest the bankruptcy courts, non-Article III judges, with the power to hear a case involving a state law claim only fortuitiously significant to the bankruptcy proceeding and to issue a final judgment therein. The plurality found that Congress could not constitutionally grant the bankruptcy judge jurisdiction over the state law claim. Unable to conclude that if Congress were aware that the grant of jurisdiction in § 1471(c) could not constitutionally encompass the related state law claims it would have been willing to leave the jurisdiction provision and adjudicating structure intact with respect to other types of claims properly before a non-Article III judge, the Court struck down on separability grounds the entire grant of jurisdiction over bankruptcy matters to the bankruptcy judges (and on and after April 1, 1984 to the bankruptcy court). 458 U.S. 50 at 87 n. 40, 102 S.Ct. at 2880 n. 40. The plurality thus concluded, “[T]he broad grant of jurisdiction to the
 
 bankruptcy courts
 
 contained in 28 U.S.C. § 1471 ... is unconstitutional.” 458 U.S. at 87, 102 S.Ct. at 2880 (emphasis added). What the Court found non-severa-ble was the grant of jurisdiction to the bankruptcy courts in § 1471(c) over all matters, both traditional bankruptcy matters and related matters such as state law claims, not the grant of jurisdiction to both the district courts and the bankruptcy judges (and on and after April 1, 1984 to the bankruptcy courts) in § 1471(a), (b), and (c). The Court did not declare that the district courts had no jurisdiction in bankruptcy matters.
 
 In re Kaiser,
 
 722 F.2d 1574 (2nd Cir.1983);
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (6th Cir.1983);
 
 Braniff Airways, Inc. v. C.A.B.,
 
 700 F.2d 214 (5th Cir.),
 
 cert. denied,
 
 — U.S.-,
 
 *130
 
 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).
 
 Cf. Moody v. Amoco Oil Co.,
 
 734 F.2d 1200, 1209 (7th Cir.1984) (“In
 
 Northern Pipeline,
 
 the Supreme Court held only that state common law causes of action cannot constitutionally be decided by a bankruptcy court.”) 28 U.S.C. § 1471 and the corresponding transition provisions were not invalidated by
 
 Northern Pipeline
 
 insofar as they provide for district court jurisdiction over cases under Title 11.
 
 [3]
 

 B.
 

 Having determined that jurisdiction to hear cases under Title 11 exists in the district court, we now address the issue of whether the district courts acted properly in promulgating rules for bankruptcy adjudication.
 

 The Rule was initially promulgated under statutory authority of the Judicial Conference of the United States and the Judicial Councils of the Circuits. When it requested that the Administrative Office of the United States Courts draft a Model Rule to operate after the Supreme Court’s stay in
 
 Northern Pipeline
 
 expired, the Judicial Conference of the United States acted under 28 U.S.C. § 331 which provides that the Conference:
 

 [Sjhall ... submit suggestions and recommendations to the various courts to promote ... the expeditious conduct of court business.
 

 The Judicial Councils of the twelve circuits then directed the district courts to adopt the Model Rule pursuant to 28 U.S.C. § 332 which provides:
 

 (d)(1) Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit....
 

 (2) All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council.
 

 Pursuant to the direction of the Seventh Circuit Judicial Council, the District Court for the Eastern District of Wisconsin adopted an Emergency Rule Regarding Bankruptcy Cases and Proceedings, December 21, 1982.
 

 In addition to the mandate in 28 U.S.C. § 332 requiring judicial officers promptly to carry into effect all orders of the Judicial Council, under 28 U.S.C. § 2071 the district courts, “may from time to time prescribe rules for the conduct of their business.” We agree with the Court in
 
 White Motor Corp. v. Citibank, N.A.,
 
 that “[T]he possibility of confusion and uncertainty arising from the
 
 Northern Pipeline
 
 decision made it necessary and appropriate for the district courts to adopt a rule for the administration of the bankruptcy system after December 24, 1982.” 704 F.2d at 263. The district courts acted properly in promulgating rules for bankruptcy adjudication.
 

 C.
 

 We now turn our attention to the validity of the Rule itself.
 

 The stated purpose of the Emergency Rule was to
 

 supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in
 
 [Northern
 
 Pipeline] or until March 31, 1984, whichever first occurs.
 
 [4]
 

 
 *131
 
 The Emergency Rule provides for the referral of “[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 ... to the bankruptcy judges of this district.” Rule (c)(1). Although the initial referral is automatic, it may be withdrawn at any time on the motion of the district court or timely motion of a party. Rule (c)(2). The bankruptcy judges have the power to perform all acts and duties necessary for the handling of those cases except conduct jury trials, hear appeals, or conduct proceedings for injunctions against a court or for contempt. Rule (d)(1).
 

 The Rule distinguishes between related proceedings and non-related proceedings. “Related proceedings are those civil proceedings that, in the absence of a petition in bankuptcy, could have been brought in a district court or a state court.” Rule (d)(3)(A). Non-related proceedings are those proceedings which were traditionally before bankruptcy judges prior to the 1978 Act. In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but must submit findings, conclusions, and a proposed judgment or order to the district judge. Rule (d)(3)(B). The district judge must review the proposed rulings
 
 de novo
 
 whether or not an appeal has been taken by the parties. Rule (e)(2)(A)(iii) and (e)(2)(B). In non-related, traditional bankruptcy matters the bankruptcy judge may enter dispositive judgments. Rule (d)(2). However, upon appeal, the district court may hold a hearing and may receive such evidence as appropriate and may accept, reject or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. Rule (e)(2)(B). Section (e)(1) of the Rule grants such an appeal as a matter of right. Therefore, in a traditional bankruptcy matter, there is no final judgment or order until an Article III district court judge has decided the matter or until the parties have waived reconsideration by a district judge. “[T]he right to
 
 de novo
 
 review by the district court at the instance of any affected party essentially renders the enforceability of judgments by the bankruptcy judge dependent upon the district court.”
 
 Moody v. Martin,
 
 27 B.R. 991, 1000 (Bkrtcy.W.D.Wisc.1983).
 

 The Interim Rule adopted by the district courts establishes a system of bankruptcy adjudication whereby the bankruptcy judges act as adjuncts of the Article III district courts. The district courts retain primary jurisdiction over bankruptcy matters while the bankruptcy judges have only derivative and terminable jurisdiction. The bankruptcy judges act as subsidiaries to and only in aid of the district courts by carrying on preliminary procedures and proposing decisions for adoption by the district court. The ultimate adjudicatory determination is reserved to the district judge.
 
 See United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980);
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (6th Cir.1983). The Interim Rule sufficiently ensures that Article III powers are exercised by Article III judges while enabling the district court to take advantage of the existing personnel devoted to bankruptcy matters and their administrative organization.
 

 Appellant challenges the Interim Rule by arguing that the automatic referral of all bankruptcy matters to the bankruptcy judges violates the spirit and intent of Rule 53 of the Federal Rules of Civil Procedure and is thus invalid. It is true that the rulemaking authority of the district courts must be exercised in a manner not inconsistent with the Federal Rules of Civil Procedure. Rule 83, F.R.Civ.P. Therefore, any system of reference established by rule of the district court arguably must not be inconsistent with the requirements of the referral system set forth in F.R.Civ.P. 53.
 
 [5]
 
 We conclude that the Inter
 
 *132
 
 im Rule is not inconsistent with Rule 53 and find that the district court had jurisdiction of this case and properly referred it to the bankruptcy judge for decision subject to review by the district court. The judgment of the bankruptcy judge became a final judgment upon affirmance by the district court.
 

 Rule 53(b) provides that reference to a master shall be the exception and not the rule. Appellant argues that the “wholesale” referral to bankruptcy judges provided for in § (c)(1) of the Interim Rule violates this requirement.
 

 In adopting the Interim Rule the judges of the district court found that exceptional circumstances existed. These circumstances included:
 

 (1) The unconstitutionality of the grant of power to bankruptcy judges in Section 241(a) of Public Law 95-598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts’ assuming the existing bankruptcy caseload on short notice.
 

 The blanket reference provided for in Rule (c)(1) was a response to an extraordinary set of circumstances which, absent the Interim Rule, threatened the orderly conduct of the business of the district courts and the adjudication of bankruptcy cases. “District courts cannot provide the immediate judicial response crucial to the creation and operation of ongoing financial reorganizations. Without immediate judicial action, opportunities for loans, for refinancing arrangements, for sales of real estate or personal property, and for renegotiation of leases or service contracts can be lost forever.”
 
 Moody v. Martin,
 
 27 B.R. at 999. The Interim Rule also had a limited life. Although the referral is automatic, the exceptional circumstances underlying adoption of the Interim Rule exist in reference to every particular case in which the automatic referral occurs. A particularized finding of exceptional circumstances on a case by case basis is, in our opinion, unnecessary under these circumstances.
 
 [6]
 

 
 *133
 
 The judgment of the district court is Affirmed.
 

 [1]
 

 . Title 28 U.S.C. § 1471 created by § 241 of the Act, provides in pertinent part:
 

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c)The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 

 Section 241 of the Act, which created Code § 1471, took effect April 1, 1984. § 402(b) of the Act. The challenged action by the bankruptcy judge giving rise to
 
 Northern Pipeline,
 
 and in the case before us, occurring during the transition period, before April 1, 1984. Focus on the text of § 1471 was nevertheless appropriate because § 405(b) of the Act provided that during the transition period the amendment made by § 241 shall apply to the courts of bankruptcy
 
 *129
 
 continued by § 404(a) the same as it would apply on and after April 1, 1984 to the new United States Bankruptcy Courts. Section 405(a) of the Act empowered bankruptcy judges to exercise in cases commenced during the transition period the jurisdiction and powers conferred by subsection (b) on the courts of bankruptcy.
 

 [2]
 

 . The amendment of § 1334 was accomplished by § 240(a) of the Act, to take effect April 1, 1984. § 402(b) of the Act. Section 405(c)(1)(C) of the Act provided for similar district court appellate jurisdiction during the transition period.
 

 [3]
 

 . In a case similar to the one now before us, Chief Judge Crabb of the United States District Court for the Western District of Wisconsin concluded that district courts continued to have jurisdiction to hear cases under Title 11.
 
 Moody v. Martin,
 
 27 B.R. 991 (Bkrtcy.W.D.Wis.1983). We agree with her careful analysis of the somewhat complicated statutory text and with her conclusion that
 
 Northern Pipeline
 
 invalidated investing bankruptcy judges with § 1471 jurisdiction, but did not void the jurisdiction of the district courts.
 

 [4]
 

 . The 1978 Bankruptcy Reform Act transition period was extended from March 31, 1984 until June 26, 1984 by a series of congressional enactments (Pub.L. No. 98-249, Pub.L. No. 98-271; Pub.L. No. 98-325). No further extensions were granted. On July 10, 1984 the President signed into law the "Bankruptcy Amendments
 
 *131
 
 and Federal Judgeship Act of 1984,” Pub.L. No. 98-353, 98 Stat. 333.
 

 [5]
 

 . Rule 9031 of the 1978 Bankruptcy Act went into effect August 1, 1983. It provides that "Rule 53 F.R.Civ.P. does not apply in cases under the Code." However, the Supreme Court’s
 
 *132
 
 April 25, 1983 Order promulgating the new rules, including Rule 9031, provides that the Rules will not apply when “in the opinion of the court their application in a pending proceeding would not be feasible or would work an injustice, in which event the former procedure applies.” 51 U.S.L.W. 4461. Rule 9031 was enacted because the new Bankruptcy Code, if left intact, would have eliminated the need to refer bankruptcy cases since they would have been heard by bankruptcy judges in the first instance. Under the Interim Rule, however, the district court is to exercise bankruptcy jurisdiction and refer matters to the bankruptcy judges for decision, subject to review by the district court. Under the present circumstances, application of Rule 9031 is infeasible. Therefore, Rule 53 F.R. Civ.P. continues to apply.
 
 See In re South Portland Shipyard and Marine Railways,
 
 32 B.R. 1012, 1021 n. 10 (Bkrtcy.D.Me.1983).
 

 [6]
 

 . In
 
 LaBuy v. Howes Leather Co.,
 
 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957) the Supreme Court held that congestion of the calendar and the unusual complexity of the antitrust issues in a case were not such exceptional circumstances as to warrant reference to a master under Rule 53(b). The United States District Court for the District of Maine found that since three of the exceptional circumstances listed in the Interim Rule deal in essence with docket congestion and case complexity they could not support a blanket reference.
 
 In re South Portland Shipyard and Marine Railways,
 
 32 B.R. 1012 at 1022. However, the exceptional circumstances surrounding the creation of the Interim Rule and the reference contained therein encompass more than merely docket congestion and case complexity. This is not a situation where one more case would impinge on an already crowded calendar but one where the entire caseload of a specialized court was placed on the district court's docket. On December 31, 1982 there were 48,573 petitions under the former Bankruptcy Act and 511,018 petitions under the 1978 Bankruptcy Code pending in the courts. During 1983, 348,872 new petitions were filed under the Code and 276 petitions under the Act were reopened. The district courts were inundated with bankruptcy cases. As noted in the text immediate judicial action is imperative in many of these cases. In addition, while bankruptcy cases are not necessarily complex, they are specialized and at the writing of the Interim Rule there was in place an entire system of bankruptcy judges and support personnel who have specialized knowledge and experience in the handling of bankruptcy cases. Under these circumstances we feel that exceptional circumstances existed to satisfy the requirement of Rule 53(b).